Board of Tax Appeals of Dauphin County, Appellant v. Odd Fellows' Home of Pennsylvania, Appellee.

Argued February 5, 1982, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Herbert A. Schaffner, Reynolds, Bihl and Schaffner,* for appellant.

*James Curtis Wood, Shumaker and Williams,* for appellee.

OPINION BY JUDGE DOYLE, June 22, 1982:

This is an appeal from an order of the Court of Common Pleas of Dauphin County which partially sustained and partially denied an appeal brought by the Odd Fellows' Home of Pennsylvania (Appellee) from a decision of the Board of Tax Appeals of Dauphin County (Board) denying Appellee's request for a property tax exemption. We will affirm in part and reverse in part.

Appellee is the owner and operator of a non-profit nursing and retirement home located on an approximately one hundred acre tract of land in Lower Swatara Township, Dauphin County. From 1974 through 1979, Appellee's property was assessed for, and Appellee duly paid, real estate taxes imposed by Dauphin County, Lower Swatara Township, and the Middletown Area School District. In a letter dated October 25, 1979, however, Appellee appealed its assessment to the Board arguing that its home was an institution of "benevolence or charity[,]" and hence exempted from taxation by Section 202(a)(3) of The Fourth to Eighth Class County Assessment Law (Assessment Law), Act of May 21, 1943, P.L. 571, *as amended,* 72

P.S. §5453.202.[1] In this letter, Appellee requested an exemption from school, county, and township taxes "effective August 5, 1949[,]'' and further requested, citing Section 1 of the Act of May 21, 1943 (Refund Law), P.L. 349, *as amended,* 72 P.S. §5566b, a refund of all real estate taxes it had paid on its property for the 1978 tax year. Following a meeting of the Board on December 21, 1979, the Board, in a letter dated December 27, 1979, informed Appellee, without explanation, that its request for a property tax exemption was denied.[2] Appellee subsequently appealed this determination to the court of common pleas, pursuant to the provisions of Section 704 of the Assessment Law, 72 P.S. §5453.704.

Before the lower court, the Board asserted that Appellee was not entitled to a tax exemption since certain residents of the home paid rent to Appellee, and since a seventy (70) acre portion of Appellee's property was rented to a commercial farmer.[3] The Board also noted that it did not believe that Appellee was entitled to a tax refund pursuant to the provisions of Section 1 of the Refund Law since it had failed to appeal its assessments in prior years pursuant to the provisions of Section 701 of the Assessment Law, 72 P.S. §5453.701. Appellee, for its part, argued (1) that its entire property was devoted to charitable purposes

---

[1] The assessment appeal was made pursuant to provisions of Section 701 of the Assessment Law, 72 P.S. §5453.701.

[2] This letter did not discuss Appellee's request for a refund of 1978 taxes.

[3] Section 202(b) of the Assessment Law, 72 P.S. §5453.202(b) provides in pertinent part that

all property, real and personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation. . . .

and was thus tax exempt, and (2) that Section 1 of the Refund Law permitted the court of common pleas to award a refund of up to two years of previously paid property taxes where a taxpayer was successful in an assessment appeal. In conformity with this latter argument, Appellee filed an amendment to its Notice of Appeal to the Court of Common Pleas requesting an order from the Court directing a refund of appellee's 1979 as well as 1978 real estate tax payments.[4]

Thereafter, on January 13, 1981, the lower court issued an opinion and order (1) affirming the Board's decision insofar as it denied a tax exemption to the seventy (70) acre portion of Appellee's property which was rented to a commercial farmer, (2) reversing the Board's denial of a tax exempt status for the remaining portion of Appellee's property,[5] and (3) granting a refund of real estate taxes Appellee paid on the now tax exempt portion of its property in 1978 and 1979. The present appeal followed.

Before this Court, the Board raises a number of challenges to the lower court's order which we believe can be fairly summarized as follows: Did the lower court err as a matter of law by ordering a refund of 1978 and 1979 taxes in this case? Since we believe that such an error did occur, we will reverse the lower court's order insofar as it directs a refund of taxes for those years.[6]

---

[4] This amendment was filed with the court on November 5, 1980, two days after the lower court's November 3, 1980 hearing on the matter.

[5] Although the lower court's order, when read literally, only purports to sustain Appellee's appeal for that portion of the property leased for residential purposes, it is clear from reading the opinion as a whole that the court intended to sustain the appeal for the entire property except for the 70 acres leased to the commercial farmer.

[6] Before this Court, neither party disputes the lower court's resolution of the tax exemption issue for the 1980 tax year.

Section 1 of the Refund Law provides in pertinent part that

> [w]henever any person . . . has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the *proper authorities of the political subdivision,* upon the filing with them of a verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. *Refunds of said moneys shall not be made,* unless a written claim therefor is filed, *with the political subdivision involved,* within two years of payment thereof. (Emphasis added.)

Section 2 of the Refund Law, 72 P.S. §5566 c, provides in turn that

> [i]n the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund of taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, then the aggrieved person or corporation shall have the right to bring suit for and recover any such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled . . . by instituting an action in assumpsit in the court of common pleas of the county wherein such political subdivision is located.

The provisions of Sections 1 and 2 of the Refund Law provide a clear procedure for seeking refunds from political subdivisions. First, a taxpayer must file a written request for a refund with "the political subdivision involved." Then, if the "proper authorities" of the political subdivision fail to appropriate funds for the requested refund, an action in assumpsit to recover the requested refund may be instituted against the political subdivision in the court of common pleas.[7]

In the present case, however, the record clearly shows that Appellee never requested a refund from any of the political subdivisions it paid taxes to in 1978 and 1979, these being Dauphin County, Lower Swatara Township, and the Middletown Area School District, and thus, that those political subdivisions never failed to honor a request for a refund. Accordingly, the only issue that was properly before the court of common pleas was appellee's statutory appeal from the Board's denial of a tax exempt status to Appellee for the 1980 tax year. Since the parties now agree that the lower court properly resolved the issue of whether Appellee was entitled to a tax exemption for the 1980 tax year, that portion of the lower court's order will be affirmed. The balance of the lower court's order in our view, however, must be reversed.

Accordingly, we enter the following

ORDER

Now, June 22, 1982, the Opinion and Order of the Court of Common Pleas of Dauphin County is reversed insofar as it orders a refund of 1978 and 1979

---

[7] See *e.g. Hartzfeld v. Snyder Township School District*, 403 Pa. 632, 170 A.2d 355 (1961) ; *Longacre Park Heating Co. v. Delaware County*, 160 Pa. Superior Ct. 252, 50 A.2d 706 (1947) ; *Bridesburg Corp. v. Township of Whitehall*, 44 Pa. D. & C.2d 460 (1967) ; *Lyon v. School District of Pittsburgh*, 18 Pa. D. & C.2d 662 (1958).

real estate taxes to the appellee, the Odd Fellows' Home of Pennsylvania, but is otherwise affirmed.

Judge MENCER did not participate in the decision in this case.